UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KRISTINE WHELAN AND ROBERT KNAPP,

Plaintiffs,

-against-

ANTHONY PARISI, an individual;
COUNTY OF DUTCHESS; and DOES 1-100,

Defendants.

**OPINION & ORDER**

25-CV-03000 (PMH)

PHILIP M. HALPERN, United States District Judge:

Kristine Whelan ("Whelan") and Robert Knapp ("Knapp" and together, "Plaintiffs") commenced this action on April 10, 2025 (Doc. 1), and filed an Amended Complaint on April 13, 2025, asserting nine claims for relief against Dutchess County (the "County") and Anthony Parisi ("Parisi" and together, "Defendants"): (1) First Amendment Political Affiliation Retaliation; (2) First Amendment Retaliation for Protected Speech; (3) Fourteenth Amendment Procedural Due Process; (4) Fourteenth Amendment Stigma-Plus Liberty Interest; (5) Breach of Implied Employment Contract; (6) Wrongful Termination; (7) Conversion;[1] (8) Violation of New York Constitution Free Speech and Political Affiliation; and (9) Detrimental Reliance (Promissory Estoppel). (Doc. 6, "Am. Compl.").

Pending before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 25; Doc. 26; Doc. 27). Plaintiffs opposed Defendants' motion (Doc. 30), and the motion was fully submitted with the filing of Defendants' reply (Doc. 33).

[1] The Seventh Claim for Relief for Conversion was withdrawn and dismissed on Plaintiffs' consent. (Doc. 23).

For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

**BACKGROUND**

Plaintiffs were each terminated from their positions as Assistant District Attorneys ("ADA") for the County when the District Attorney ("DA") Parisi took office in January 2024. (*See generally* Am. Compl.).

Whelan commenced her employment as an ADA on November 1, 1994. (*Id.* ¶ 10). Her benefits package at the time of hire provided, *inter alia*, lifetime medical benefits after achieving 25 years of service with the County; and full pension benefits after 30 years. (*Id.* ¶ 11). Whelan was widely respected as the Bureau Chief of the Special Victims Bureau prosecuting child abuse, sexual assault, domestic violence, and homicide cases. (*Id.* ¶ 15). Her record of service, performance, and conviction rate was exemplary. (*Id.* ¶¶ 12-13). Whelan's immediate supervisor, the former DA Matthew Weishaupt ("Weishaupt"), campaigned for the position of DA against Parisi and lost the election to Parisi in a surprising upset. (*Id.* ¶¶ 16, 19). Whelan had supported Weishaupt's campaign efforts and attended campaign fundraisers. (*Id.* ¶ 17). After Parisi assumed office, on January 11, 2024, and despite her background and record of service, Whelan was terminated by Parisi—29 years and 2.5 months into her employment. (*Id.* ¶¶ 9, 11, 14).

Knapp commenced his employment as an ADA on February 6, 1995. (*Id.* ¶ 39). Like Whelan, Knapp's benefits package at the time of hire provided lifetime medical benefits after achieving 25 years of service with the County; and full pension benefits after 30 years. (*Id.* ¶ 40). Knapp, who served for over twenty years as a Judge Advocate with the United States Army Reserve, was widely respected as the Bureau Chief of the Narcotics Bureau, prosecuting drug traffickers and other serious criminals. (*Id.* ¶¶ 41, 44). Like Whelan, he had an exemplary record of service, performance, and rate of convictions. (*Id.* ¶¶ 41-42). Knapp had an excellent working

relationship with Weishaupt and supported his campaign efforts. (*Id.* ¶ 47). Like Whelan, on January 11, 2024, Knapp was terminated by Parisi, just shy of 29 years into his employment. (*Id.* ¶¶ 38, 40).

Parisi had promised Plaintiffs between the time of his election in November 2023 and when he took office on January 1, 2024, that he had no intention of terminating anyone. (*Id.* ¶¶ 21, 51). Notwithstanding, Plaintiffs were ushered out of the building immediately upon termination, without cause, warning, or any notice whatsoever. (*Id.* ¶¶ 30, 56). Parisi then sent out an office-wide email advising that Plaintiffs and another employee were no longer employed by Defendant. (*Id.* ¶¶ 33, 61).

This litigation followed.

## **STANDARD OF REVIEW**

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## **ANALYSIS**

### I. First Through Fourth Claims for Relief: First and Fourteenth Amendments

Plaintiffs' First and Second Claims for Relief allege a claim of First Amendment Political Affiliation Retaliation and a claim of First Amendment Retaliation for Protected Speech. Their Third and Fourth Claims for Relief allege a Fourteenth Amendment Procedural Due Process violation and a Fourteenth Amendment Stigma-Plus Liberty Interest violation. These claims are brought pursuant to 42 U.S.C. § 1983. Section 1983 provides in pertinent part that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Thus, to state a claim under § 1983, Plaintiff must demonstrate "(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a

state actor." *Id.* "The first step in any [§ 1983] claim is to identify the constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Court addresses each of these four § 1983 claims *seriatim*.

A. First Amendment Claims

Defendants argue that both of Plaintiffs' First Amendment claims fail because there is no right protected by the First Amendment that was violated, and because Plaintiffs do not allege any protected "speech." (Doc. 27 at 12-13). While the Court agrees that Plaintiffs fail to allege any protected speech, it cannot similarly conclude at the motion to dismiss stage of this case that Plaintiffs have not alleged a First Amendment claim for political affiliation retaliation as a matter of law.

"To state a claim for First Amendment retaliation, a plaintiff must allege that: '(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right.'" *Latouche v. Bodge*, No. 25-CV-01856, 2026 WL 1480883, at *5 (S.D.N.Y. May 27, 2026) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). "Where a public employee is alleging retaliation for the exercise of First Amendment free speech rights, he or she must initially demonstrate that: (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action." *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003).

"Speech by a public employee is on a matter of public concern if it relates 'to any matter of political, social, or other concern to the community.'" *Id.* (quoting *Connick v. Myers*, 461 U.S.

138, 146 (1983)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48.

Plaintiffs, in the Amended Complaint, did not plead what the protected speech at issue was. Each pled that they expressed support for Parisi's opponent. (Am. Compl. ¶¶ 17, 47, 67). Whelan pled she also "attended campaign fundraisers [for Parisi's opponent] in her free time." (*Id.* ¶ 17). There are no further allegations concerning protected speech in the pleading; indeed, there is no speech alleged at all. Accordingly, Defendants' motion to dismiss the second claim for relief for First Amendment Retaliation for Protected Speech is granted.

Supporting a particular candidate's political campaigns is "categorized as political affiliation rather than speech for First Amendment purposes." *Smith v. Da Ros*, 777 F. Supp. 2d 340, 353 (D. Conn. 2011) (citing *Gronowski v. Spencer*, 424 F.3d 285, 292 (2d Cir. 2005)). Defendants argue that Plaintiffs' terminations are excepted from the protections of the First Amendment because political affiliation is a permissible employment criterion for some positions. (Doc. 27 at 12-13).

Defendants are correct that "[w]hile the First Amendment typically protects public employees from being terminated based on their political beliefs and expression, *see Elrod v. Burns*, 427 U.S. 347, 373 (1976), there is an exception to this rule for policy-making and confidential employees, for whom political viewpoints are permissible employment criteria and who, accordingly, may be discharged by reason of political affiliations, political beliefs, ideological viewpoints or partisan activity." *Cowart v. Arteta*, No. 23-CV-09412, 2025 WL 2733827, at *4 (S.D.N.Y. Sept. 25, 2025). "[T]he ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring

authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* (quoting *Branti v. Finkel*, 445 U.S. 507, 518 (1980)). The Second Circuit has identified a non-exhaustive list of eight factors to guide courts in determining whether an employee falls within the policymaker exception to First Amendment protections:

> [W]hether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders.

*Vezzetti v. Pellegrini*, 22 F.3d 483, 486 (2d Cir. 1994). "The proper approach is to assess all the factors in order to determine whether 'there is a rational connection between shared ideology and job performance.'" *Id.* (quoting *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988)). Courts must consider the inherent duties of an employee's role, and while the policymaker question is one of law for the Court, *Danahy v. Buscaglia*, 134 F.3d 1185, 1191 (2d Cir. 1998), it requires analysis of facts that have not been developed at this stage of the proceeding.[3] Accordingly, the motion to dismiss the First Claim for Relief is denied.

---

[3] While Plaintiffs have offered in connection with their opposition on this motion a copy of a "job description from the official Dutchess County website for a Dutchess County District Attorney's Office Bureau Chief" (Doc. 30-1, Doc. 30-2), they have not established that it is a document the Court can consider on a Rule 12(b)(6) motion. To the extent Plaintiffs argue the Court may take judicial notice of the job description (Doc. 30 at 13), while the Court may take judicial notice of matters of public record, *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020), it is not for the truth of their contents, but rather to establish their existence, *Alvarez v. Cnty. of Orange, N.Y.*, 95 F. Supp. 3d 385, 397 (S.D.N.Y. 2015) (collecting cases). The purpose for which this exhibit is offered is not proper on a Rule 12(b)(6) motion. *See Davis v. N.Y.C. Health & Hosps. Corp.*, No. 24-CV-03745, 2026 WL 1862748, at *6 (S.D.N.Y. June 29, 2026) ("Davis does not incorporate the document describing her job descriptions 'on the face of the complaint,' so it is not proper to consider the description on a motion to dismiss.").

B. Fourteenth Amendment Claims

Defendants argue that both Fourteenth Amendment claims fail because Plaintiffs were at-will employees without any protectable property interest in continued public employment, and the statements pled that were made about Plaintiffs' terminations are insufficient to invoke the protections of the Due Process Clause. (Doc. 27 at 13-17).

With respect to the procedural due process claim, the relevant statute, N.Y. County Law § 702, permits the district attorney to revoke the appointment of an assistant district attorney at any time, making them at-will employees. "'Employees at will have no protectable property interest in their continued employment,' and will only 'possess a protected interest in public employment if contractual or statutory provisions guarantee continued employment absent sufficient cause for discharge or he can prove a de facto system of tenure.'" *Mitchell v. Cnty. of Chautauqua*, No. 23-CV-00959, 2024 WL 3276312, at *6 (W.D.N.Y. July 1, 2024) (quoting *Catania v. United Fed'n of Tchrs.*, No. 21-CV-01257, 2024 WL 495638, at *8 (S.D.N.Y. Feb. 8, 2024)). "This circuit looks to New York Civil Service Law and the statutes which create a particular position or the authority to appoint or remove an individual to or from the position to determine whether a New York public employee has a property interest in his position requiring that he be afforded a hearing before termination." *Id.* (quoting *Catone v. Spielmann*, 149 F.3d 156, 160 (2d Cir. 1998)). Plaintiffs' opposition relies on the allegation that between the election in November 2023 and taking office on January 1, 2024, Parisi "promised Plaintiffs and others that he had no intention of terminating anyone." (Doc. 30 at 20). They argue that these "mutually explicit understandings" are sufficient to confer a legitimate claim of entitlement to continued employment. (*Id.*). Plaintiffs cite no authority for this position other than *Velez v. Levy*, 401 F.3d 75, 85 (2d Cir. 2005), a case which held that the plaintiff lacked a constitutionally protected property interest in her elected school

board position to support a due process claim. "In [Plaintiffs'] case, the controlling state law does not create a 'legitimate claim of entitlement' to continuing job tenure" and as such, Plaintiffs have not plausibly alleged a procedural due process violation. *Tranello v. Frey*, 758 F. Supp. 841, 852 (W.D.N.Y. 1991) (rejecting argument by assistant county attorney that there was a property interest in continued employment), *aff'd in part, appeal dismissed in part*, 962 F.2d 244 (2d Cir. 1992). Accordingly, Defendants' motion to dismiss Plaintiffs' Third Claim for Relief for Violation of the Fourteenth Amendment – Procedural Due Process is granted.

With respect to the stigma-plus claim for relief, Plaintiffs must establish: "1) that they were defamed; and 2) that the defamation occurred in the course of the termination of governmental employment or was coupled with a deprivation of a legal right or status." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002). "To show defamation, the plaintiffs must show that the statements complained of were false; that they stigmatized the plaintiffs; and that they were publicized." *Id.* at 101–02. Plaintiffs argue that the subject email (Compl. ¶¶ 33, 61), which publicly announces the personnel decision to the office, is unquestionably stigmatizing because it implies that Plaintiffs lack professionalism, commitment, and compassion. (Doc. 30 at 21). Statements announcing personnel decisions, even when it is possible that "townsfolk drew negative inferences" therefrom, are not necessarily actionable constitutional claims. *O'Connor v. Pierson*, 426 F.3d 187, 195 (2d Cir. 2005); *Wiese v. Kelley*, No. 08-CV-06348, 2009 WL 2902513, at *4 (S.D.N.Y. Sept. 10, 2009) ("Courts have consistently held that statements announcing personnel decisions, even when leaked to the press, and even when a reader might infer something unfavorable about the employee, are not actionable."). "The statement must denigrate the employee's competence as a professional and impugn the employee's professional reputation in

such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his profession." *Frascatore v. Blake*, 344 F. Supp. 3d 481, 490 (S.D.N.Y. 2018).

The office-wide email alleged here announces that Plaintiffs are no longer employed by the County, and goes on to discuss generally the DA's opinion on his own responsibilities and those of the DA's Office. (Compl. ¶¶ 33, 61). Plaintiffs do not allege that any of the statements in the email were false; nor can the Court "attach a defamatory implication to a simple and truthful statement of termination." *Pisani v. Westchester Cnty. Health Care Corp.*, 424 F. Supp. 2d 710, 717 (S.D.N.Y. 2006); *see also Frascatore*, 344 F. Supp. 3d at 490-91 ("Frascatore did not allege that any statements made by the CCRB Defendants, or the statement made by the NYPD source, were false, which alone requires dismissal of Frascatore's stigma-plus claims"); *Paterno v. City of New York*, No. 17-CV-08278, 2018 WL 3632526, at *5 (S.D.N.Y. July 31, 2018) (granting motion to dismiss and explaining that certain statements could not form the basis for a stigma-plus claim "because the Complaint does not claim that they are false"). Because Plaintiffs have not alleged the email contained false statements, and do not contain facts capable of being proven false, Defendants' motion to dismiss Plaintiffs' Fourth Claim for Relief for Violation of the Fourteenth Amendment – Stigma-Plus Liberty Interest is granted.

II. <u>Fifth, Sixth, Eighth, and Ninth Claims for Relief: State Law Claims</u>

Plaintiffs' remaining claims allege breach of implied contract, wrongful termination, violation of the New York State Constitution, and promissory estoppel. The Court addresses each of these four claims *seriatim*.

A. Breach of Implied Employment Contract

Plaintiffs allege for their Fifth Claim for Relief that their employment relationship with the County was governed by an implied contract based on written policies, past practices, and assurances regarding benefits, tenure, and fair treatment. (Am. Compl. ¶¶ 86-88). "The elements of a breach of implied contract claim are the same as for a traditional breach of contract claim: '(1) the existence of a contract, (2) performance by the party seeking recovery, (3) breach by the other party, and (4) damages suffered as a result of the breach.'" *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 383 (S.D.N.Y. 2024) (quoting *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 F. App'x 274, 276 (2d Cir. 2018)). "An implied contract 'may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct.'" *Id.* (quoting *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 (2d Cir. 2006)).

Here, as discussed *supra*, Plaintiffs were at-will employees, and have not pled or argued any writing or other intent on the County's part to accept contractual limitations on its right as an at-will employer to terminate employees.

Plaintiffs argue in opposition that although they were at-will employees, the employer's policies, practices, or representations created an implied contract for certain benefits or protections, such as lifetime medical or pension benefits. (Doc. 30 at 22). Accordingly, they argue, they have sufficiently alleged a breach of implied contract claim because they were terminated before they could retire and take advantage of the Retiree Health Insurance with reduced premiums made available to retirees. (*Id.* at 22-23). Plaintiffs, however, were terminated from their at-will employment, were not retirees eligible for Retiree Health Insurance, and Plaintiffs have not alleged

the existence of any limitation on the County's right to terminate them at will.[4] In any event, "[m]ere existence of a written policy, without the additional elements . . ., does not limit an employer's right to discharge an at-will employee or give rise to a legally enforceable claim by the employee against the employer." *Baron v. Port Auth. of New York & New Jersey*, 271 F.3d 81, 85 n.2 (2d Cir. 2001). Similarly, "oral assurances with only general provisions in the employee manual [are in]sufficient" to create an implied employment contract. *Id.* Accordingly, Defendants' motion to dismiss the Fifth Claim for Relief is granted.

B. Wrongful Termination in Violation of Public Policy

Plaintiffs' Sixth Claim for Relief alleges wrongful termination in violation of public policy. "[N]o claim for wrongful termination exists in New York unless the employment contains a fixed term of duration which has been breached." *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 664 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999). In other words, a wrongful termination claim may not be maintained under state law, as a matter of law, when the employment relationship is at will. *Id.* at 665.

As at-will employees, Plaintiffs claim therefore fails as a matter of law and their opposition scarcely attempts to overcome this fatal pleading defect. Plaintiffs boldly contend, citing to a single inapposite case, *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 780 (2d Cir. 1991), that New York permits wrongful termination claims for at-will employees when there has been a First Amendment violation. (Doc. 30 at 23). *Ezekwo*, however, did not consider or address any

[4] Defendants offer a copy of the Dutchess County Non-Union Benefit Plan ("NUB Plan") that they posit applied to Plaintiffs as ADAs, and argue that the NUB Plan was not an employment contract with the County. (Doc. 26-2; Doc. 27 at 18-19). The Court need not consider this document as Plaintiffs' pleading is insufficient on its face, without reference to any extraneous documents.

purported claim of wrongful termination under state law and concerned an employment relationship governed by an individual written contract.

Accordingly, Defendants' motion to dismiss the Sixth Claim for Relief is granted.

C. Violation of New York Constitution – Free Speech and Political Affiliation

Plaintiffs' Eighth Claim for Relief alleges free speech and political affiliation claims under the New York State Constitution. "[F]ree speech claims under Article 1, Section 8 of the New York State Constitution are subject to the same analysis as free speech claims under the First Amendment." *Chinese Am. Citizens All. Greater New York v. New York City Dep't of Educ.*, 802 F. Supp. 3d 483, 540 (S.D.N.Y. 2025); *Martinez v. Sanders*, 307 F. App'x 467, 468 n.2 (2d Cir. 2008) (noting that the plaintiff's free speech claims brought under Article 1 § 8 of the New York State Constitution "are subject to the same standards as the First Amendment claims").

Accordingly, for the same reasons that Plaintiffs' First Claim for Relief survives, so too does Plaintiffs' Eighth Claim for Relief to the extent it alleges retaliation for political affiliation; and for the same reasons that Plaintiffs' Second Claim for Relief fails, so too does Plaintiffs' Eighth Claim for Relief to the extent it alleges retaliation for speech under the New York State Constitution.[5]

D. Detrimental Reliance (Promissory Estoppel)

Plaintiffs' Ninth Claim for Relief for promissory estoppel alleges that Parisi made a clear and unambiguous promise of continued employment to Plaintiffs and they detrimentally relied on

[5] The Court questions whether there exists a private right of action for violations of the New York State Constitution, as "it is a common view among District Courts in this Circuit that there is no right of action under the New York State Constitution for claims that can be brought under § 1983." *Buchanan v. City of New York*, 556 F. Supp. 3d 346, 365 (S.D.N.Y. 2021). Defendants did not make any arguments specifically addressed to the viability of this claim for relief, apart from their arguments concerning the merits of the First Amendment claims for relief. (*See* Doc. 27 at 13; Doc. 33 at 7). "[I]t is not this Court's responsibility to raise and make counsel's arguments for them." *Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *11, n.7 (S.D.N.Y. Feb. 17, 2021).

such promises. (Compl. ¶¶ 99-102). To state a claim for promissory estoppel, a plaintiff must allege "that the [defendant] made a clear and unambiguous promise, upon which the [plaintiff] reasonably relied, to its detriment." *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 202 (2d Cir. 2019). Such claims are generally precluded in the employment context "when no promise arises that is separate from an employment relationship." *Shetel Indus. LLC v. Adin Dental Implant Sys., Inc.*, No. 17-CV-02505, 2021 WL 1108666, at *6 (E.D.N.Y. Mar. 23, 2021). The alleged promises, as pled and argued by Plaintiffs, were that Parisi said he had no intention of terminating anyone and that no matter who won the election, everybody would keep their jobs. (Compl. ¶¶ 21, 22, 51). These purported promises "were not separate from but, rather, were central to the employment relationship." *Wood v. Mike Bloomberg 2020, Inc.*, No. 20-CV-02489, 2022 WL 891052, at *10 (S.D.N.Y. Mar. 25, 2022), *aff'd sub nom. Cordova v. Mike Bloomberg 2020, Inc.*, No. 22-1023, 2023 WL 6119448 (2d Cir. Sept. 19, 2023). Put simply, Plaintiffs have failed to plausibly allege facts framing a viable claim for promissory estoppel in the employment context. Accordingly, Defendants' motion to dismiss the Ninth Claim for Relief is granted.

## III. Qualified Immunity

Defendants argue that Parisi is entitled to qualified immunity. Having dismissed all claims other than the First Amendment and New York State Constitution Political Affiliation Retaliation claims, the Court addresses only whether Parisi is entitled to qualified immunity for those claims.

While qualified immunity is ordinarily an affirmative defense asserted in an answer, a defendant can properly raise a qualified immunity defense in a pre-answer 12(b)(6) motion to dismiss. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). A 12(b)(6) motion based on qualified immunity may be granted if 'the facts supporting the defense appear on the face of the complaint.'" *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna*, 386 F.3d

at 435-36). A defendant bears the burden of establishing that he is entitled to qualified immunity. *Gardner v. Murphy*, 613 F. App'x 40, 41 (2d Cir. 2015) (citing *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013)). Consequently, when a defendant raises a qualified immunity defense in a 12(b)(6) motion to dismiss, the defendant must accept that "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Hyman*, 630 F. App'x at 42 (quoting *McKenna*, 386 F.3d at 436). Thus, "[a]t the motion to dismiss stage, the qualified immunity defense 'faces a formidable hurdle . . . and is usually not successful' because it is the *defendant* that must plead and prove the defense." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (second alteration in original) (quoting *Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020)).

The doctrine of qualified immunity protects officials from liability for civil damages when, "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The contours of a right are sufficiently clear if there is a case in which "'an officer acting under similar circumstances . . . was held to have violated' the Constitution." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam) (quoting *Escondido v. Emmons*, 586 U.S. 38, 43 (2019)). In other words, if an official "could have 'read' the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct," then they are not entitled to qualified immunity. *Id.* (quoting

*City and County of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015)). If an official's belief that his or her action does not violate clearly established law is "objectively reasonable," he or she is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013).

Here, Defendants do not overcome the "formidable hurdle" and meet their burden of establishing qualified immunity at this stage of the litigation. Defendants argue that because the Supreme Court has held that political affiliation is a permissible employment criterion for some positions, *Elrod*, 427 U.S. at 367; *Branti*, 445 U.S. at 517–18, and courts have held that prosecutors are Policymaker/Confidential employees, it would not be unreasonable for Parisi to believe that he could replace them. (Doc. 27 at 23). The Second Circuit, in *Danahy*, concluded that defendants were entitled to qualified immunity on appeal from a denial of summary judgment because it was objectively reasonable for defendants to believe that each of the plaintiff's positions were within the policymaker exception "at the time the defendants acted." 134 F.3d at 1192-93. However, under current Supreme Court precedent, "[a] right is not clearly established if existing precedent does not place the constitutional question beyond debate." *Zorn*, 146 S. Ct. at 930. Under *Zorn*, an official would have to have been able to read the relevant precedent beforehand. *Id. Danahy* is not that case. And Defendants have the burden to establish that qualified immunity exists. *Dixon*, 994 F.3d at 101. Defendants do not meet their burden. In other words, "Defendants do not argue or show" that Plaintiffs' right to not be terminated on the basis of their political affiliation "is not clearly established." *Shea v. Town of Brookhaven*, No. 21-CV-05696, 2026 WL 948364, at *29 (E.D.N.Y. Apr. 8, 2026). As discussed *supra*, the relevant precedent sets forth a non-exhaustive eight-factor test for determining the applicability of the policymaker exception to the First Amendment. *See Cowart*, 2025 WL 2733827, at *4. Just as the facts are underdeveloped on that

claim for relief, so too are the facts to determine whether the defense of qualified immunity could apply.

Accordingly, Defendants have not met their burden to establish that Plaintiffs' political affiliation retaliation claims should be dismissed on qualified immunity grounds.

IV. Claims Against the County

Defendants argue that Plaintiffs' claims against the County cannot survive because they fail to allege a policy, custom or practice of the municipality that was a cause of the constitutional violation under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). (Doc. 27 at 21). A plaintiff may satisfy the "policy or custom" requirement by alleging one of four options, including "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question." *Jones v. Westchester Cnty.*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016). "To hold a municipality liable . . . for actions taken by government officials or bodies that caused an alleged violation of a plaintiff's rights, the plaintiff must show that the relevant official or body had final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular violation at issue." *Winbush v. New York City Dep't of Educ.*, No. 23-CV-01320, 2025 WL 2624350, at *6 (S.D.N.Y. Sept. 10, 2025). Plaintiffs argue that they satisfy the *Monell* pleading requirements because Parisi is the County's final policymaker as "[t]he Second Circuit has been consistent in holding that the actions of county prosecutors in New York are generally controlled by municipal policymakers for purposes of *Monell*," and the DA "may be deemed to have acted as a county policymaker when he acts as the manager of the district attorney's office . . ." *Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 110 (N.D.N.Y. 2023). Plaintiffs go on to cite to the allegation in the Complaint that "Parisi used his newly found power to mete out personal vengeance on certain people in the office – including Plaintiffs - with no

regard for their human rights, Constitutional rights, financial welfare, compensation and benefits to which they were absolutely and contractually entitled as longtime government employees." (Doc. 30 at 24-25 (citing Am. Compl. ¶¶ 29, 58)). Defendants do not respond directly to this point, instead relying on their opening brief and the argument that there is no underlying constitutional violation. (Doc. 33 at 11). In view of that deficiency, and the Court's obligation to read the allegations in the light most favorable to the Plaintiffs at this preliminary stage of litigation, Defendants' motion to dismiss the remaining claims against the County under *Monell* is denied. *Winbush*, 2025 WL 2624350, at *7.[6]

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, the Second, Third, Fourth, Fifth, Sixth, and Ninth Claims for Relief are dismissed. The First and Eighth Claims for Relief are dismissed to the extent they plead a free speech retaliation claim.

The First and Eighth Claims for Relief, to the extent they plead political affiliation retaliation shall proceed to discovery.

Defendants shall file an Answer to the Amended Complaint within fourteen days of the date of this Opinion and Order.

The Clerk of Court is respectfully directed to terminate the pending motion (Doc. 25).

---

[6] To the extent Defendants' motion seeks dismissal of the claims against Parisi in his official capacity, the motion is denied as Plaintiffs represent that he is named in his personal capacity. (Doc. 30 at 25). Likewise, because Parisi is sued in his personal capacity, punitive damages may be recoverable, *Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1985), and as such, Defendants' motion to dismiss the claim for punitive damages on the grounds that the claims are asserted against Parisi in his official capacity (Doc. 27 at 23) is denied.

**SO ORDERED:**

Dated: White Plains, New York
August 10, 2026

PHILIP M. HALPERN
United States District Judge